IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ERIC GORINS,

        Plaintiff,

  v.                                   Case No. 25-CV-294

ROBERT SAUERWEIN, et al.,

        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff Eric Gorins claims that he was injured during an accident which took place on February 18, 2022. Gorins claims that he was riding on the outside of a garbage trailer as a member of the inmate garbage crew at Jackson Correctional Institution, when the driver "whipped the vehicle around in a sharp U-turn at an excessive rate of speed, and/or in such a manner so as to cause the trailer or trailer tire to strike a concrete step or curb, violently bouncing the trailer, which causes Plaintiff and other inmates riding on the trailer to be violently shaken, and which caused Plaintiff to strike his head hard on a solid, steel post on the trailer." (Pls Complaint at ¶ 7.)

Gorins claims that the Correctional Officer who drove the vehicle – Robert Sauerwein - was deliberately indifferent to his safety in the way he operated the vehicle, in violation of the Eighth and Fourteenth Amendments. He also claims that the warden at Jackson Correctional Institution - Elizabeth Tegels – was negligent in

her training of Sauerwein. He also alleges that Tegels was deliberately indifferent to Plaintiff's medical needs following the incident.

Gorins was transferred to Flambeau Correctional Center. Gorins claims that he was given improper treatment for the injury he allegedly sustained during the February 18, 2022 incident. He claims that the warden at Flambeau – Carmen Dohms – was negligent in her failure to ensure that Plaintiff's medical needs were met.

However, Plaintiff's claims fail on multiple grounds.

With respect to Sauerwein, is no evidence that any accident took place on February 18, 2022. The video of the garbage crew shows no such incident – no evidence of unsafe operation and no evidence of anyone being injured. The only evidence of such an incident came from Gorins's self-report, which was not corroborated by anyone. Additionally, Sauerwein was never put on notice of any safety concerns expressed by Gorins or anyone else with respect to his handling of the garbage detail. For these reasons, Gorins's Eighth Amendment and negligence claims fail, and Sauerwein is otherwise entitled to discretionary and qualified immunity.

Second, with respect to Dohms and Tegels, there is no evidence that any of them were involved or aware of the incidents at issue here. Tegels was never put on notice of any safety concerns involving Sauerwein or the garbage detail, and neither Tegels nor Dohms were put on notice of any complaints regarding Gorins's medical care. Neither Tegels nor Dohms are medical providers, and as such, they had no role

in making any medical decisions with respect to Gorins's treatment. Additionally, the treatment itself was appropriate and in accordance with the appropriate standards of care. Finally, Plaintiff failed to sufficiently comply with the notice of claim statute, and defendants are otherwise entitled to discretionary and qualified immunity.

For these reasons, Defendants are entitled to summary judgment.

## STATEMENT OF CASE

Defendants incorporate by reference Defendants' Proposed Findings of Fact ("DPFOF") which are being filed concurrently with this suit.

### I. The Parties

Plaintiff Eric Gorins (Gorins) was an inmate with the Wisconsin Department of Corrections (Corrections) housed at Jackson Correctional Institution (Jackson) from January 18, 2022 to May 4, 2022 and at Flambeau Correctional Center (Flambeau) (supervised living facility) from May 4, 2022 to April 4, 2023, at the times of the claims in Gorins' Complaint. (DPFOF ¶ 1.)

Defendant Robert Sauerwein (Sauerwein) was formerly employed by Corrections as a Correctional Officer at Jackson. He worked at Jackson from May 1996 to April 9, 2022. (DPFOF ¶ 2.)

Defendant Elizabeth Tegels (Tegels) was formerly employed by Corrections as the Warden of Jackson. She held this position from December 2012 until she retired in September of 2025. (DPFOF ¶ 3.) In Tegels capacity as Warden, she had the duties and responsibilities as generally defined by Wis. Stat. § 302.04 and as otherwise specifically set forth in the Wisconsin Statutes and Wisconsin Administrative Code.

She was responsible for the overall administration and operation of Jackson. She had the responsibility at the institution level for implementing all Corrections' policies and directives, and legislative and judicial mandates. In this position, she was familiar with policies applicable to Jackson and the general operation of the institution. (DPFOF ¶ 4.)

Defendant Carmen Dohms (Dohms) is currently employed by Corrections as a Superintendent at Flambeau. She has held this position since August 19, 2017. (DPFOF ¶ 6.) Under the general direction of the Wisconsin Correctional Center System Deputy Warden, Dohms has overall responsibility for the operation and administration of Flambeau. Flambeau is a minimum-security facility with substance abuse programming. Her position includes, but is not limited to, managing inmate work programs, ensuring compliance with regulatory standards, and fostering a work environment that supports inmate rehabilitation and skill development. (DPFOF ¶ 7.)

## II.    The February 18, 2022 Incident and CO Sauerwein

Gorins transferred to Jackson on January 18, 2022. (DPFOF ¶ 12.) He claims that on February 18, 2022, at approximately 10:48 a.m., he was working on garbage collection and riding on the exterior of a garbage collection trailer being pulled by a tractor driven by Sauerwein. (DPFOF ¶ 13.) Gorins claims that due to Sauerwein's driving of the tractor, the trailer or trailer tire struck a concrete step or curb, violently bouncing the trailer, which caused him to "strike his head hard on a solid, steel post on the trailer." (DPFOF ¶ 14.)

CO Sauerwein was working at Jackson on February 18, 2022 from 7:30 a.m. to 4:30 p.m. (DPFOF ¶ 15.) Sauerwein's assigned post was first shift Maintenance Building Correctional Officer. (DPFOF ¶ 16.) As a part of his duties, Sauerwein was the officer assigned to drive the tractor pulling the trailer. (DPFOF ¶ 17.) The records reflect that Gorin was working on garbage crew that day. (DPFOF ¶¶ 18-20.)

As a general matter, when an inmate is trying out for a position in maintenance, Sauerwein meets with them and verbally provides him with safety training as needed. They are given a brief description of what they can and cannot do. (DPFOF ¶ 22.) Additionally, the lead inmate worker also works with the inmate worker who wants to work as part of the garbage crew as a trial run and advises them what they can and cannot do. (DPFOF ¶ 23.) The tractor which pulls the garbage trailer is small, with an estimated top speed of 10 miles per hour. (DPFOF ¶ 27.)

While there is no written policy on where an inmate can ride on the trailer, Sauerwein would never have ordered an inmate to ride on the outside of the trailer. (DPFOF ¶ 24.) Additionally, at no point did Gorins complain to Sauerwein about feeling unsafe while riding on the trailer. (DPFOF ¶ 25.) Even with garbage inside the trailer, there is always room for inmate workers to ride inside. That had never been a problem during Sauerwein's time supervising the garbage crew. (DPFOF ¶ 26.)

There was no accident involving the garbage trailer which occurred on February 18, 2022. (DPFOF ¶ 28.) The video of garbage collection on February 18, 2022 was saved and is being filed simultaneously with this brief. (DPFOF ¶ 41.)

Additionally, Sauerwein has no recollection of an incident involving Gorins in which he was injured while working on the garbage crew on that date or on any other date. (DPFOF ¶ 29.) At no point did Gorins complain to Sauerwein about being injured while working on the garbage crew. (DPFOF ¶ 30.) If Gorins had told Sauerwein that he was injured at any point, Sauerwein would have completed an incident report and offered Gorins the opportunity to see the Health Services Unit. (DPFOF ¶ 31.) Sauerwein did not drive the tractor/trailer in a reckless and unsafe manner. (DPFOF ¶ 32.)

## III.    Warden Tegels

Gorins claims that Tegels should have known CO Sauerwein had failed to assure the safety of Gorins; that she failed to properly train and/or supervise CO Sauerwein in order to avoid the alleged injuries Gorins sustained as a result of the February 18, 2022 accident he alleges in his Complaint, and that she failed to address or improve the claims inmates were being required to ride on the outside of the trailer during garbage collection after Gorins alleged accident on February 18, 2022. (DPFOF ¶ 33.) He also alleges that Tegels was deliberately indifferent to his medical needs and negligent. (Dkt. 3 at ¶ 1.)

However, Tegels had no knowledge of any safety concerns with respect to Sauerwein's operation of the garbage trailer, nor was she ever put on notice by Gorins about any issues with respect to garbage collection on February 18, 2022 or any other date. Based on a review of the Correspondence Tracking Database and the related paper file, Tegels received no correspondence from Gorins or any other inmate about

a February 18, 2022 incident, nor did she receive correspondence in 2021 or 2022 which contained any concerns about CO Sauerwein, garbage collection, maintenance, trailer, or safety issues related to garbage collection. (DPFOF ¶¶ 34-40, 42-44, 46-47.) Her only awareness of any potentially related incident was when she was notified by the Health Services Unit Manager during a staff meeting that an unnamed inmate had requested to be seen after allegedly striking his head during garbage collection. (DPFOF ¶ 45.) However, she was not told the name of the inmate (due to the privacy of their medical records), and she would have relied on the medical staff to make informed decisions regarding that inmate's care. (DPFOF ¶ 46.)

Tegels relied on the staff in the Maintenance Department, which was supervised by the Corrections Management Services Director, to manage garbage collection. The Maintenance Department was comprised of a Correctional Sergeant, Building and Grounds Supervisor, and Building and Grounds Superintendent. (DPFOF ¶¶ 51-52.) Tegels had no role in supervising the day-to-day operations of the Maintenance Department, nor was she responsible for training them or training in garbage collection. (DPFOF ¶¶ 53-55.) That was handled by the Maintenance Department, and she was only involved as needed. (DPFOF ¶ 56.)

## IV.    Warden Dohms

Gorins arrived at Flambeau Correctional Center on May 4, 2022 and remained there until April 4, 2023. (DPFOF ¶ 56.) Gorins claims that when he transferred from Jackson to Flambeau he "continued to suffer from severe and persistent headaches, dizziness, excessive light sensitivity, and stomach pain and/or upset stomach."

7

(DPFOF ¶ 57.)  He alleges that Dohms was deliberately indifferent to his medical needs and negligent. (Dkt. 3 at ¶ 1.)

However, Dohms had no knowledge of any medical concerns raised by Gorins. Gorins would have received a handbook when he arrived at Flambeau which would have given him guidance on filing/report any grievance he may have had.  That could include filing an inmate complaint and submitting internal correspondence to Flambeau staff. (DPFOF ¶ 58.) However, Dohms did not receive any correspondence from Gorins in which he complained about his medical care, nor did she review any inmate complaints which alleged deficient medical care. (DPFOF ¶¶ 59-64.) Dohms is not a medical provider, and as such, she would have relied on the medical staff in the Health Services Unit to handle any medical concerns. No concerns were shared with her regarding Gorins. (DPFOF ¶¶ 64-69.) At no point did Dohms prevent Gorins from receiving medical care. (DPFOF ¶ 93.)

Gorins alleges that Dohms's failure to ensure proper medical care extended to her failure to accommodate his disabilities and to stop him from being harassed for seeking medical treatment. Specifically, Gorins alleges that Dohms failed to ensure that he had access to grey-tinted sunglasses which he ordered for delivery to the prison. However, Dohms was never aware that Gorins had a disability, nor was that ever documented in his electronic medical record or the Wisconsin Integrated Correctional System (WICS). (DPFOF ¶ 92.) Additionally, Dohms was neither involved in or aware that Gorins had ordered grey-tinted sunglasses, nor was she involved their denial. Property was managed the Correctional Sergeant in accordance

with agency policy. (DPFOF ¶ 75-80, 91.) Finally, Dohms had no awareness of Gorins's claims involving harassment. While Gorins submitted one inmate complaint in which he complained that he was being harassed by a correctional officer, Dohms had no involvement in reviewing or processing that inmate complaint, nor was she aware of until she reviewed it in defense of this suit. (DPFOF ¶¶ 81-86, 90.)

## V.    Medical Care

In support of their defense in this suit, Defendants have filed the expert report of Dr. Laura Sukowaty, M.D. Dr. Sukowaty is licensed to practice medicine in the state of Wisconsin. She is board certified in family medicine, and has been continuously licensed to practice medicine in the State of Wisconsin since February 1995 and has been practicing since 1997. Dr. Sukowaty has worked in Corrections Division of Adult Institutions, Bureau of Health Services, as a physician from 2006 to present, initially part time, but full time since 2018. She has been an Associate Medical Director (Physician Supervisor), headquartered at Dodge Correctional Institution, since September 28, 2020. (DPFOF ¶ 9.)

As an Associate Medical Director for Corrections, Dr. Sukowaty is responsible for professional medical services to inmates in accordance with Corrections and Bureau of Health Services policies, procedures and standards. Additionally, in her role as Associate Medical Director, she has developed education for the providers employed by Corrections and has been involved in policy decisions for the state. (DPFOF ¶ 10.) In addition to full-scope family medicine, Dr. Sukowaty worked in an

9

urgent care setting from 1995 until 2019, managing patients with acute injuries, including head injuries. (DPFOF ¶ 11.)

Dr. Sukowaty reviewed Gorins's medical records in detail, documenting the relevant appointments after the February 18, 2022 incident. (DPFOF ¶¶ 102-130.) Dr. Sukowaty notes that Gorins may have suffered, at most, a mild traumatic brain injury (TBI) based on his reported symptoms. (DPFOF ¶ 98.) However, she opines that Gorins received appropriate screening and treatment for his injury. She documented that he was seen by nursing the same day as his injury, and at dozens of times, thereafter, including 24 times by nursing, 3 times by his primary provider, once by a specialist, and once by optometry. She also noted that Gorins had an MRI which came back normal, though she acknowledges that imaging can fail to pick up subtle abnormalities. (DPFOF ¶¶ 100, 131-132, 135.) She also noted that Gorins saw a neurologist who did not diagnose Gorins with post-concussive syndrome, but rather with common migraines, and that Gorins was not compliant with the neurologist's proposed treatment recommendations. (DPFOF ¶ 133.) She also highlighted that Gorins was diagnosed with hypertension, and that he not compliant with its treatment despite being informed multiple times that elevated blood pressure could cause headaches. (DPFOF ¶ 134.)

Ultimately, Dr. Sukowaty concluded that Gorins was suffering from common migraines and untreated hypertension, and that his non-compliance with treatment recommended by both DOC providers and his neurologist contributed to his continued headaches. Dr. Sukowaty also concluded that Gorins was screened and appropriately

treated by DOC medical staff in accordance with their standard of care. (DPFOF ¶¶ 136-138.)

## STANDARD OF REVIEW

Under Federal Rules of Civil Procedures 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Moreover, more than mere conclusory allegations are required to defeat a motion for summary judgment. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996). In order for a party "to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

## ARGUMENT.

### I.    Plaintiff's Section 1983 claims fail as a matter of law.

To begin, Plaintiff alleges both Fourteenth and Eighth Amendment deliberate claims against Defendants in this case. Convicted prisoners are protected by the Eighth Amendment, while pretrial detainees are protected by the Fourteenth

Amendment. *See Pittman by & through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 566 (7th Cir. 2024), *reh'g denied*, No. 23-2301, 2024 WL 3889635 (7th Cir. Aug. 21, 2024), and *cert. denied*, 145 S. Ct. 1154. Because Gorins was a convicted prisoner, rather than a pretrial detainee, Defendants will analyze this case under the Eighth Amendment.

To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must meet a two-pronged test: (1) the inmate must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the inmate must demonstrate that the prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).

**B.      Defendants were not deliberately indifferent to a substantial risk of serious harm to Gorins, nor were they deliberately indifferent to his serious medical needs.**

1.      Deliberate indifference is a high standard.

The deliberate indifference element has both objective and subjective components. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal citations omitted.) The objective component requires that Plaintiff must show that conditions were sufficiently serious by creating an excessive risk to his health and safety. *Blackard,* 2 F.4th at 719. The subject component requires that prison officials knew of and disregarded this excessive risk of harm. *Id.* at 720 (citing *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018). It is not enough that a reasonable prison official would or should have known that the prisoner was at risk: the official "must actually know of and disregard the risk to incur culpability." *Lewis v. Richards*, 107 F.3d at

552-54; *see also Farmer*, 511 U.S. at 834-37.) As the *Farmer* Court concluded, the appropriate requirement in Eighth Amendment suits against prison officials is a subjective recklessness test for deliberate indifference because it "isolates those who inflict punishment." *Farmer*, 511 U.S. at 893.

In explaining the knowledge requirement, the *Farmer* Court highlighted that unfortunate outcomes do not equal constitutional violations:

> An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. … *But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.*

511 U.S. at 837-38; emphasis added.

The requirement that the defendants have actual knowledge of impending harm is not a requirement to be taken lightly. *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004), illustrates the importance of the actual knowledge requirement. In *Riccardo*, the Seventh Circuit overturned a jury verdict of deliberate indifference to the dangers of a sexual assault by a cellmate. *Id.* at 525. Although the prisoner told the guard that he feared he would be killed by gang members, the cellmate did not act for his gang in harming the prisoner, and the prisoner also advised the officer on a different occasion that he did not have a problem with the cellmate. *Id.*  The court of appeals reasoned that while the jury may have believed the guard should have credited the prisoner's earlier, and private statement, what the guard "should have believed is not the right question; we need to know what he *did* believe." *Id.* at 527 (emphasis by the Court). Given the prisoner's denial of a problem, no reasonable jury

could have found that the guard subjectively appreciated that his action of placing them in a cell would expose the prisoner to a substantial risk of serious harm. *Id.*

*Whiting v. Marathon County Sheriff's Department*, 382 F.3d 700 (7th Cir. 2004), involved a court-issued no contact order between two offenders – Smith and Whiting – at a county jail. *Id.* at 703-04. Smith was charged with conspiracy to commit homicide – his intended victim being Whiting. *Id.* The no contact order was given to Smith and a copy was placed in Smith's county jail file. *Id.* The Seventh Circuit affirmed the district court's decision granting summary judgment to the defendant jail officials for allowing Whiting to be in the same room as Smith while they were both incarcerated at the county jail. *Id.* Defendant-guard Faust had escorted Whiting to the room where Smith was waiting and instructed her to enter it. *Id.* Despite the no contact order in Smith's jail file, because Faust did not have actual knowledge of it, he could not be liable for any of Whiting's injuries. *Id.* at 703-04.

## 2.    Section 1983 claims must be based on personal involvement.

Title 42 U.S.C. § 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged unconstitutional deprivation of rights. *Zentmeyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000). There is no vicarious or respondeat superior liability under § 1983. *Monell v. Dep't of Social Servs., City of New York*, 436 U.S. 658, 690–91 (1978); *Watts v. Westfield*, No. 10-CV-550-WMC,

2014 WL 3447080, at *4 (W.D. Wis. July 11, 2014). So it is not sufficient to allege that an official is liable on the basis of his supervisory status alone. *Id.*

Likewise, "failure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Sanville v. McCaughtry*, 266 F.3d 724, 739-40, 2001 WL 1117363 (7th Cir. 2001) (internal citations omitted). In the state correctional institutions context, inadequate procedures and/or practices do not sustain an Eighth Amendment claim:

> even when viewing the record in the light most favorable to Lewis, Lewis has failed to convince us of anything except that the procedures at the WCC leave something to be desired when attempting to screen out predatory gang members, resulting in egregious lapses in security at the prison. Obviously this reflects very poorly on the defendants, but it certainly falls short of being sufficient to maintain a claim under the Eighth Amendment.

*Lewis v. Richards*, 107 F.3d at 552-54.

Allegations against one individual cannot be considered against other defendants with different roles in the alleged misconduct at issue. *See, e.g., Brach v. City of Wausau*, 617 F. Supp. 2d 796, 802 (W.D. Wis. 2009). And "there is no 'collective knowledge doctrine' under § 1983 as there is in the context of a motion to suppress evidence. This means that plaintiff must prove that each defendant in particular knew about a substantial risk of harm, he may not allege facts about 'jail staff' generally." *Anderson v. Cnty. of La Crosse*, No. 08-CV-234-BBC, 2009 WL 1139991, at *3-5 (W.D. Wis. Apr. 27, 2009) (emphasis added). A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation,

or if it occurred with his knowledge or consent." *Chavez v. Ill. State Police,* 251 F.3d 612, 652 (7th Cir.2001). As the Seventh Circuit has recognized, institution staff "do not have a free-floating obligation to put things right." *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). "Bureaucracies divide tasks," and "no prisoner is entitled to insist that one employee do another's job." *Id.* This division of labor is important to "bureaucratic organization" and the "efficient performance of tasks," as people who "stay within their roles can get more work done." *Id.*

   3.   <u>The deliberate indifference claim fails as a matter of law as to each defendant.</u>

As a preliminary matter, Plaintiff cannot possibly establish that he was facing an objectively serious risk to his health or safety with respect to his work as a part of the garbage crew. The video of the February 18, 2022 garbage collection shows no such risk – no reckless driving; no dangerous turns or bumps; no accidents of any kind. The garbage trailer crawls at a minimal rate of speed, without any evidence that inmate workers are facing an excessive threat to their health or safety. On this basis alone, no jury could find that any of the Defendants were deliberately indifferent.

With respect to the subjective prongs, Plaintiff's case is even less tenable.

   a.   **Sauerwein was not deliberately indifferent.**

Sauerwein could not be found deliberately indifferent because he had no knowledge of any risk to Gorins. At no point did Gorins complain to Sauerwein about his driving, nor did Sauerwein ever force him to ride on the outside of the garbage trailer (indeed, the video shows inmate workers both inside of and outside of the trailer). Additionally, at no point was Sauerwein put on notice by anyone else

16

regarding any safety concerns with his operation of the garbage trailer. Absent any evidence that Sauerwein was aware of and disregarded an excessive risk to Gorins's health or safety, Gorins's claims fail.

### b.    Tegels was not deliberately indifferent.

For similar reasons as Sauerwein, no jury could find that Tegels was deliberately indifferent. Tegels was the warden at Jackson. Her duties were multifaceted and involved delegation of the numerous responsibilities associated with prison management. For garbage detail, she delegated authority to the Maintenance Department. For medical care, she relied on the Health Services Unit and the medical providers treating Gorins. Unless she is notified specifically about a risk or ongoing concern, Tegels is going to rely on her staff to execute their duties in accordance with their job descriptions. That is precisely the type of bureaucratic division that the Seventh Circuit highlighted in *Burks*. 555 F.3d at 595.

Gorins's claim could nevertheless survive if Tegels was aware of an excessive risk to his health or safety and chose to disregard it. But Gorins cannot possibly demonstrate that. Gorins will be unable to demonstrate that Tegels was on notice of any safety concerns implicated by Sauerwein's operation of the garbage trailer. Tegels did not receive any correspondence from any inmate in which she was put on notice of safety concerns implicated by Sauerwein's operation, nor did Gorins file any inmate complaints reviewed by Tegels which identified that risk. Tegels had no personal involvement in supervising garbage detail – as that was delegated to the

17

Maintenance Department – nor was she responsible for any training of the maintenance staff.

With respect to Gorins's medical care, Tegels was unaware of Gorins's medical concerns – which makes sense as she was neither a medical provider nor did she have access to Gorins's medical records. Gorins did not complain to her about his medical care, and her only knowledge of any incident came from a staff meeting in which the Health Services Unit Manager mentioned that an inmate had requested to be seen after striking his head during garbage collection. In any event, Tegels would have deferred to the medical providers, as she has neither any medical training nor any role in dictating treatment.

Based on these facts, no jury could determine that Tegels was aware of and deliberately disregarded a risk to Gorins's health or safety. She is entitled to summary judgment.

### c.    Dohms was not deliberately indifferent.

The same analysis which applies to Tegels's defense also applies to Dohms. While Gorins's claim against Dohms focuses on the medical treatment he received at Flambeau, the same gaps which doom his claim against Tegels also doom his claim with respect to Dohms.

As Dohms noted, she had no knowledge of his medical condition, medical treatment, or any medical concerns. Gorins did not file any inmate complaints which Dohms reviewed, nor did Gorins send any correspondence to Dohms in which he complained about his medical care, including his access to grey-tinted sunglasses or

the alleged harassment by prison staff. In any event, Dohms would have deferred to the people best equipped to make decisions about his medical treatment – the trained medical providers who saw Gorins regularly after the alleged February 18, 2022 incident. Absent any evidence that Dohms was aware of and consciously disregarded Gorins's serious medical needs, she is entitled to summary judgment.

## II.    The Defendants are entitled to qualified immunity because Gorins cannot show they violated a constitutional right that was clearly established at the time of the alleged violation.

Even if this Court were to decline summary judgment on the grounds argued above, it should still dismiss Gorins's claims because the defendants are entitled to qualified immunity.

### A.    Qualified Immunity Protects All But The Plainly Incompetent or Those Who Knowingly Violate the Law

"Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citation omitted). The test for qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distractions, and liability when they perform their duties reasonably." *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017) (citation omitted).

Although qualified immunity is "an affirmative defense," once it's raised, "the burden shifts to the plaintiff to defeat it." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir.

2019). To do so, a "plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Id.* A court has "discretion to choose which of the elements to address first." *Id.*

The "clearly established" requirement is based on the "principle of fair notice." *Campbell*, 936 F.3d at 545. Clearly established thus "means that, at the time of the [official's] conduct, the law was '"sufficiently clear" that every 'reasonable official would understand that what he is doing'" is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" Id. (citation omitted).

A legal principle is beyond debate only when it has a "sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589 (citation omitted). That means the "rule must be 'settled law,'" i.e., "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90 (citation omitted).

Given the "emphasis on notice, clearly established law cannot be framed at a 'high level of generality.'" *Campbell*, 936 F.3d at 545. To avoid generality, a court "must determine whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Leiser*, 933 F.3d at 702. That requires a court to consider whether the law clearly prohibited "the [official's] conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. Although a plaintiff

need not point to a "a case 'on all fours' with the facts" presented, he must "show some settled authority that would have shown a reasonable" official in the same position that his or her "actions violated the Constitution." *Leiser*, 933 F.3d at 702; see also Campbell, 936 F.3d at 546 (noting that qualified immunity attaches when the legal principles have not "been applied in a factual context specific enough to provide fair notice to the defendants that their conduct was unconstitutional, regardless of whether the "broad principles" otherwise have "support in [the] caselaw").

In sum, the "demanding" qualified immunity standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (citation omitted); see also *Campbell*, 936 F.3d at 546 ("The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)).

### B. Gorins Cannot Point to a Case Showing the Defendants Violated a Clearly Established Constitutional Right

Here, Gorins cannot overcome qualified immunity because he cannot point to existing caselaw that placed the constitutionality of the defendants' conduct "beyond debate." *Wesby*, 138 S. Ct. at 589. To the extent Gorins could show there are cases on both sides of the issue, the law did not clearly prohibit the defendants' actions, so they are entitled to qualified immunity.

### III. Gorins's negligence claims fail as a matter of law.

Gorins argues that Sauerwein was negligent in his driving of the garbage trailer; that Tegels was negligent in her failure to address Sauerwein's negligent

21

driving or Gorins's subsequent medical care; and that when he transferred to Flambeau, Warden Dohms was negligent in her handling of Gorins's medical care.

All of these claims fail. First, Gorins failed to comply with Wisconsin's notice of claim statute with respect to Tegels and Dohms. Second, none of the Defendants were negligent. Third, Defendants are entitled to discretionary immunity under Wisconsin law. Finally, if this Court dismisses Gorins's civil rights claims against the Defendants, it should relinquish jurisdiction over the state law claims.

### A.    Gorins failed to serve a sufficient notice of claim with respect to his specific allegations against Dohms or Tegels.

Plaintiff served three notices of claim upon the Attorney General as required by state law. (DPFOF ¶ 139.) However, these notices were defective with respect to his claims against Dohms or Tegels, as they failed to specifically identify the time, date, location, and circumstances giving rise to his claims against them. As such, his negligence claims against them must be dismissed.

Under Wis. Stat. § 893.82, a plaintiff must file a notice of claim with the Wisconsin Attorney General in order to commence an action under state law against a state officer, employee, or agent. The notice of a claim must state "the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved." Wis. Stat. § 893.82(3). "Wisconsin's notice-of-claim statute must be strictly followed." *Davis v. Harding*, 2014 WL4976605 at *29 (W.D. Wis. Oct. 3, 2014). Substantial compliance is insufficient to meet the terms of the statute. *Kellner v. Christian*, 197 Wis. 2d 183, 195, 539 N.W.2d 685 (1995).

Failure to comply with the requirements of Wis. Stat. § 893.82 is fatal to any claim because its requirements are jurisdictional. *Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 116, 595 N.W.2d 392 (1999). "Section 893.82 is not merely a procedural statute that may be waived by the state or its employee[s]. Compliance with sec. 893.82 is necessary to warrant recovery against a state employee." *Tierney v. Lacenski*, 114 Wis. 2d 298, 304 (Wis. Ct. App. 1983) (citing *Mannino v. Davenport*, 99 Wis. 2d 602, 612 (Wis. 1981).

Plaintiff's notice of claim did not specifically identify any specific time, manner, location, or circumstances with respect to his claim against Tegels and Dohms. (DPFOF ¶ 140.) With respect to Tegels, Gorins makes generalized (and inaccurate) claims about her supervision and training of Sauerwein, but he offers no specific times, dates, locations, or occurrences in which she was personally put on notice of the risks to his safety. With respect to his generalized medical claims against Tegels and Dohms, Gorins does not specifically identify any medical appointments, treatment decisions, or specific actions taken by them with respect to his medical care. As such, his notice of claims are deficient, and the negligence claims must be dismissed.

### B.    None of the defendants were negligent.

"Under Wisconsin law, a claim for negligence 'requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages.'" (Dkt. 28:9) (quoting *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860).

For the same reasons as explained previously, the undisputed facts show that Defendants were not negligent. With respect to Sauerwein, Gorins cannot show that Sauerwein's operation of the garbage trailer was negligent, as the video does not show any reckless driving or any incident which could explain Gorins's injuries. With respect to Tegels and Dohms, Gorins cannot show that they owed a duty of care with respect to his medical treatment, as neither are medical providers nor did they have any involvement in his medical care. For similar reasons, Gorins cannot demonstrate that their actions caused Gorins's injuries, as the expert testimony of Dr. Sukowaty demonstrates that it was Gorins's own failure to follow prescribed treatment that likely triggered the symptoms he continued to experience.

For these reasons, Gorins's state law claims against should be dismissed on the merits.

### C.    Defendants are entitled to discretionary immunity.

The doctrine of discretionary immunity (sometimes referred to as "governmental" or "public officer" immunity) generally bars personal liability against state officials for acts performed in the course of their official duties. "The general rule is that a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty." *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976). "Otherwise stated, there is no substantive liability for damages resulting from mistakes in judgment where the officer is specifically empowered to exercise such

judgment." *Id.* at 301-02. Numerous public policy considerations justify the rule, including,

> (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

*Id.* at 299. To restate the point, "[u]nder the general rule as applied in Wisconsin, state officers and employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties." *Kimps v. Hill*, 200 Wis. 2d 1, 10, 546 N.W.2d 151 (1996). If the three defendants here "are entitled to [discretionary] immunity, then there is nothing to try even though factual disputes may exist on the issue of the [defendants'] negligence." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 16, 253 Wis. 2d 323, 646 N.W.2d 314.

The critical inquiry in determining whether a defendant should be afforded immunity is the discretionary versus ministerial analysis. *Kimps v. Hill*, 200 Wis. 2d 1, 21, 22, 546 N.W.2d 151 (1996). The test for determining whether a duty is discretionary or purely ministerial is well-established. A ministerial act is one in which a duty is so "absolute, certain, and imperative, involving merely the performance of a specific task when the law imposes, prescribes, and defines the time, mode, and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Kimps*, 200 Wis. 2d at 10-11, 546 N.W.2d 151. It is a duty which is positively imposed by law and is not at all dependent upon the official's

judgment or discretion. *Scott v. Savers Prop. & Cas. Ins. Co.,* 2003 WI 60, ¶ 27, 262 Wis.2d 127, 663 N.W.2d 715. The burden of finding an exception to discretionary immunity is on the plaintiff:

> "Initially, it should be noted that [defendant] does not carry a burden to demonstrate that he is entitled to immunity; on the contrary, the general rule for state employees is immunity and an exception must be demonstrated in order for this rule not to apply."

*Kimps*, 200 Wis. 2d at 18-19. "Persons suing public officers must find an exception to this rule" of immunity. *Kimps*, 187 Wis. 2d at 523.

The distinction between ministerial and discretionary acts were delineated in precise language in *Spencer v. County of Brown,* 215 Wis. 2d 641 (1977). Spencer was an inmate at the Brown County jail. *Spencer*, 215 Wis. 2d at 644. He slipped and fell in the jail shower area after showering, injuring himself. *Id.* After bringing suit and facing a discretionary immunity defense, Spencer cited to the safe place statute, Wis. Stat. § 101.11, as his source of law that required the defendant, Brown County, to maintain a safe shower area. *Id.* at 648. Citing older lines of cases, the court noted that s. 101.11 does not impose specific tasks with specific time, mode, and occasions; instead, it involved "the exercise of judgment or discretion rather than the mere performance of a prescribed task." *Id.* at 651-652 (internal citations omitted.) In other words, the law mandated that the county maintained a safe shower area, but it left the specific acts of the employees at their discretion to make it safe. Acting with that discretion, the employees, the *Spencer* court ruled, were protected by discretionary immunity. *Id.* at 652.

Here, Gorins relies on generalized claims to underline the legal arguments underpinning his negligence claims against the defendants. This is insufficient to sustain his claims. There is no duty prescribed by regulation or law which mandates how Sauerwein was supposed to operate the garbage trailer – no duty which described how he was supposed to drive the trailer, or whether it was acceptable to have workers hanging off the side of the garbage trailer, or any other specific requirements which reflect that it was a ministerial duty. Similarly, there is no duty prescribed by law which dictates what kind of supervision a warden had to have over garbage collection, nor law which defines what involvement a warden should have in an inmate's medical treatment. Gorins's complaint certainly does not prescribe such a law or regulation. These types of decisions are not ministerial – they are left to the discretion of the defendants.

The narrow, judicially-created exceptions to the discretionary immunity rule do not apply as a matter of law. First, the professional discretion exception has been interpreted as a professional medical exception. *Scarpaci v. Milwaukee Cty.*, 96 Wis. 2d 663, 687 (Wis. 1980) ("The theory behind immunity for quasi-judicial decisions does not dictate an extension of the immunity to cover the medical decisions of medical personnel employed by a governmental body.") None of these individuals here are medical providers nor providing medical care, which means that this exception does not apply. Second, there are no allegations of "malicious, willful, intentional conduct" by the defendants. *See KL v. Hinickle*, 144 Wis. 2d 102, 113 (1988). For the reasons stated

above, the acts that are the subject of this lawsuit do not fall within the strict definition of "ministerial duty" and are instead acts of discretion.

And, finally, the "known and compelling danger" exception does not apply here. This exception applies only where dangerous circumstances give rise to a ministerial duty to act. *Priess v. ABC Insurance Company et al.*, 2008 WI App 167, ¶18; *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 34, 253 Wis. 2d 323, 646 N.W.2d 314. As the Wisconsin Supreme Court explained in *Lodl*, "a dangerous situation will be held to give rise to a ministerial duty only when 'there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion.'" 2002 WI 71, ¶ 38. The circumstances of this case fall far short of that standard.

While no one can dispute that Plaintiff was entitled to safe working conditions and reasonable medical treatment, these kinds of broad, generalized claims are precisely the type of claims which fall under the doctrine of discretionary immunity. As such, his negligence claims fail.

> **D.    If the Court declines to reach the negligence issue on the merits, it can relinquish jurisdiction over these state law claims.**

Alternatively, Defendants submit that this court should relinquish jurisdiction over any remaining state law negligence claims. The general rule is that federal courts relinquish jurisdiction over state law claims if all federal claims are resolved before trials. 28 U.S.C. § 1367(c)(3); *Stinson v. Schueler*, 2021 WL 3722196 (W.D. Wis. Aug. 23, 2021) *citing Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812

(7th Cir. 2021).  Defendants assert that if this court grants summary judgment in regard to the Eighth Amendment claims against them, it should decline to exercise subject matter jurisdiction over Gorins's state law claims.

## CONCLUSION

For these reasons, the Court should grant the Defendants' motion for summary judgment and dismiss Plaintiff's claims with prejudice.

Dated: December 18, 2025

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Samir S. Jaber
SAMIR S. JABER
Assistant Attorney General
State Bar #1076522

BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2229 (Jaber)
(608) 266-1780 (Flugaur)
(608) 294-2907 (Fax)
Samir.Jaber@wisdoj.gov
Brandon.Flugaur@wisdoj.gov